IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KING DRUG CO. OF FLORENCE, et al. | : : : | CIVIL ACTION |
| v. | : : | |
| ABBOTT LABORATORIES, et al. | : | NO. 19-3565 |

MEMORANDUM

Bartle, J.                                          January 6, 2020

This is a civil antitrust action alleging anticompetitive conduct by defendants related to a pharmaceutical product, AndroGel. Plaintiffs are wholesalers which allege they were denied the opportunity to purchase lower-priced generic versions of AndroGel due to the alleged anticompetitive conduct and thereby suffered overcharges. Before the court is the motion of defendants to transfer venue of this action to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

I

The complaint alleges that defendant AbbVie engaged in a scheme from at least 2007 to 2014 to delay and to exclude generic competition for its blockbuster drug AndroGel. AndroGel is a brand-name transdermal testosterone gel product approved by the FDA for the treatment of hypogonadism, a clinical syndrome that results

from failure of a man's body to produce adequate amounts of testosterone.

Plaintiffs are King Drug Co. of Florence, Inc. ("King Drug"), AmerisourceBergen Corp. and AmerisourceBergen Drug Corp. (collectively, "AmerisourceBergen"), Bellco Drug Co. ("Bellco"), H.D. Smith LLC ("H.D. Smith"), Cardinal Health, Inc. ("Cardinal"), Harvard Drug Group, LLC ("Harvard Drug"), McKesson Corp. ("McKesson"), J.M. Smith Corp. d/b/a/ Smith Drug Co. ("J.M Smith"), Burlington Drug Co., Inc. ("Burlington"), North Carolina Mutual Wholesale Drug Co. ("North Carolina Mutual"), Dakota Drug Inc. ("Dakota"), Value Drug Co. ("Value Drug"), and FWK Holdings, LLC ("FWK"). Defendants are AbbVie Inc., AbbVie Products LLC, Abbot Laboratories, and Unimed Pharmaceuticals LLC (collectively, "AbbVie"), Besins Healthcare, Inc. ("Besins"), Actavis, Inc. and Actavis Holdco U.S. (collectively, "Actavis"), Par Pharmaceutical, Inc. and Paddock Laboratories, Inc. (collectively, "Par/Paddock"), and Teva Pharmaceuticals USA, Inc. ("Teva"). The complaint alleges the following claims: (1) the unlawful maintenance and extension of a monopoly through an overarching conspiracy in violation of 15 U.S.C. § 2 against AbbVie (Count I); (2) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Actavis (Count II); (3) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Par/Paddock (Count III); (4) the unlawful maintenance and extension

of a monopoly through sham litigation in violation of 15 U.S.C. § 2 against AbbVie and Besins (Count IV); and (5) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Teva (Count V).

Unimed Pharmaceuticals, a successor of AbbVie, and an affiliate of defendant Besins, jointly developed AndroGel 1% in the 1990s. The FDA approved AndroGel 1% in 2000 and Solvay Pharmaceuticals, Inc., which had acquired Unimed and was later acquired by AbbVie, began marketing AndroGel. Solvay and Unimed were headquartered in Marietta, Georgia.

In 2003, the United States Patent Office issued the '894 patent relating to AndroGel to Unimed and Besins. Soon thereafter, Unimed and Besins filed patent infringement lawsuits in the Northern District of Georgia against Watson Pharmaceuticals, Inc. and Paddock, based on Watson and Paddock's filing of Abbreviated New Drug Applications ("ANDAs") requesting approval from the United States Food and Drug Administration ("FDA") to market a generic version of AndroGel 1%. See 21 U.S.C. § 355(j). Par was later added to the lawsuits. The patent lawsuits were assigned to The Honorable Thomas W. Thrash, Jr. In September 2006, while motions for summary judgment were pending, the parties settled. As part of each settlement, Solvay agreed to license Watson and Par to launch generic versions of AndroGel 1% in August 2015, five years before expiration of the '894 patent. The parties also entered into an

agreement whereby Solvay hired Watson, Paddock, and Par to provide promotion and/or manufacturing services for AndroGel.

On January 27, 2009, the Federal Trade Commission ("FTC") brought an antitrust suit against Solvay, Watson, and Par/Paddock concerning the reverse payments to Watson and Par/Paddock in the United States District Court for the Central District of California.  The FTC action against Solvay, Watson, and Par/Paddock precipitated a wave of private antitrust litigation based on the same allegations.  Shortly thereafter, on February 2, 2009, a direct purchaser of AndroGel, Meijer Inc. and Meijer Distribution, Inc. (collectively, "Meijer") filed a putative class action complaint in that district.  The next day, direct purchasers Rochester Drug Cooperative, Inc. ("RDC") and Louisiana Wholesale Drug Co. ("LWD") each filed putative class action complaints.

On April 8, 2009, the court in the Central District of California granted the defendants' motion to transfer venue of the FTC action and the putative class actions to the Northern District of Georgia pursuant to § 1404(a).  See F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081, 1084 (C.D. Cal. 2009).  The court determined that the Northern District of Georgia, where the underlying patent suits were litigated and settled, was a more convenient forum for the actions.  Id. at 1090.

In June 2009, Rite Aid Corp. and several other retailers of AndroGel filed two antitrust actions challenging the 2006

reverse payment agreements with Watson and Par/Paddock in the Middle District of Pennsylvania.  Three consumers also filed purported class actions in the District of New Jersey.  See Stephen L. LaFrance Pharmacy, Inc. v. Unimed Pharm., Inc., No. 09-1507, 2009 WL 3230206, at *1 (D.N.J. Sept. 30, 2009).  The three consumer antitrust actions were transferred to the Northern District of Georgia pursuant to § 1404(a).[1]  Id.  Thereafter, the Judicial Panel on Multidistrict Litigation created a multidistrict litigation ("MDL") in the Northern District of Georgia to coordinate for pretrial proceedings pursuant to 28 U.S.C. § 1407 the Middle District of Pennsylvania actions with those pending in the Northern District of Georgia and a related action in the District of Minnesota.  See In re Androgel Antitrust Litig., 655 F. Supp. 2d 1351, 1352 (U.S. Jud. Pan. Mult. Lit. 2009).  Thereafter, on May 8, 2015, Giant Eagle Inc. ("Giant Eagle"), another retailer of AndroGel, filed an antitrust action in the Western District of Pennsylvania which was subsequently transferred to the Northern District of Georgia MDL.

      Since the transfer to the Northern District of Georgia of these actions, Judge Thrash has presided over extensive discovery and litigation.  Judge Thrash initially dismissed the reverse payment claim asserted by the FTC.  See In re Androgel

---

1. The consumer plaintiffs later unilaterally dismissed their claims.

Antitrust Litig., 687 F. Supp. 2d 1371, 1379 (N.D. Ga. 2010). His decision was later overturned by the Supreme Court. See F.T.C. v. Actavis, 570 U.S. 136 (2013). On remand, Judge Thrash decided five summary judgment motions regarding the scope of private damages, viable causation theories, and standards for liability. See In re Androgel Antitrust Litig., No. 09-955, 2018 WL 2984873, at *1, *19 (N.D. Ga. June 14, 2018). In July 2018, Judge Thrash denied certification of a class of direct purchasers of AndroGel. He found that joinder of parties would not be impractical and thus there was no need to certify a class. In re Androgel Antitrust Litig., No. 09-956, 2018 WL 3424612, at *4 (N.D. Ga. July 16, 2018). Trial in that action and most of the retailer actions was set for February 2020. However, all but one of the plaintiffs, Giant Eagle, have now settled their claims in those cases. Giant Eagle originally filed suit in the Western District of Pennsylvania and is seeking remand to that district for trial now that pretrial proceedings have been completed in the MDL. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 40 (1998).

There is also litigation related to AndroGel in this district. On September 8, 2014, the FTC brought suit against AbbVie and Besins in the Eastern District of Pennsylvania alleging two antitrust violations. First, the FTC alleged that AbbVie and Besins illegally maintained a monopoly through sham litigation against Teva and Perrigo Company ("Perrigo"), another generic drug

-6-

manufacturer.  Second, it alleged that AbbVie entered into an unlawful reverse payment agreement with Teva whereby AbbVie shared a portion of its monopoly profits with Teva in exchange for Teva's agreement to keep generic AndroGel off the market.  This court dismissed the FTC's reverse payment claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See F.T.C. v. AbbVie Inc., 107 F. Supp. 3d 428, 438 (E.D. Pa. 2015).  As for the sham litigation claim, this court entered judgment in favor of the FTC following a bench trial and awarded $448 million in monetary relief.  See F.T.C. v. AbbVie Inc., 329 F. Supp. 3d 98, 146 (E.D. Pa. 2018).  The action is currently on appeal.  See F.T.C. v. AbbVie Inc., Nos. 18-261, 18-2748 & 18-1758 (3d Cir.).

On July 2, 2018, RDC and Value Drug filed suit in this district against AbbVie and Besins alleging sham litigation against Teva and Perrigo.  See Value Drug Co. v. AbbVie Inc., No. 18-2804 (E.D. Pa.).  The court thereafter granted the defendants' unopposed motion to stay that action until the earlier of a decision by the Court of Appeals resolving the appeals in F.T.C. v. Abbvie, Inc. or sixty days after any party files a Notice of Termination of Stipulated Stay.

On August 17, 2018, CVS Pharmacy, Inc., Rite Aid Corp., Walgreen Co., and several other indirect purchasers filed suit against AbbVie and Besins alleging unlawful monopolization through sham litigation against Teva and Perrigo.  See Walgreen Co. v.

AbbVie, Inc., No. 18-3494 (E.D. Pa.); CVS Pharm., Inc. v. AbbVie, Inc., No. 18-3495 (E.D. Pa.). Plaintiffs brought their claims on their own behalf and as the assignees of Cardinal, McKesson, and/or AmerisourceBergen. The parties stipulated to stay those actions on September 10, 2018. Thereafter, plaintiffs settled and voluntarily dismissed those actions.

II

Section 1404(a) provides in relevant part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

We begin with the undisputed fact that venue is proper both in the Eastern District of Pennsylvania and the Northern District of Georgia. Certain defendants maintain places of business in both districts. Once the court determines that venue is proper, it must determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal citation omitted). "The burden of establishing the need for transfer . . . rests with the movant," and generally, "the plaintiff's choice of venue should not lightly be disturbed." Id. "Transfer 'is not to

be liberally granted' and should not occur 'unless the balance of convenience of the parties is strongly in favor of defendant.'" Edwards v. Equifax Info. Servs., LLC, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018) (quoting Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).

In the Third Circuit, the contours for our analysis under § 1404(a) are set forth in Jumara v. State Farm Insurance Co. See 55 F.3d at 879-80. While there is no definitive formula or list of factors for courts to consider in ruling on § 1404(a) motions, courts consider variants of public and private interests protected by § 1404(a). Id.

Private interest factors that we may consider include: (1) plaintiff's forum preference as manifested by his original choice; (2) the defendants' forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that they may actually be unavailable for trial in one of the fora; (6) the location of the books and records, which is similarly limited to the extent that the files could not be produced in the alternative forum; and (7) practical considerations that could make the trial easy, expeditious, or inexpensive. Id.; see also In re Howmedica Osteonics Corp., 867 F.3d 390, 402 n.7 (3d Cir. 2017).

Public interest factors that we may consider include: (1) the enforceability of the judgment; (2) court congestion of the different fora; (3) local interest in deciding local controversies at home; (4) public policies of the fora; and (5) familiarity of the trial judge with the applicable law in state diversity cases. Jumara, 55 F.3d at 879. These considerations also support transferring an action to a district when there is another action involving "the same or similar issues and parties." In re Howmedica, 867 F.3d at 402.

We will examine each relevant factor in turn, beginning with the private factors. We first consider the preferred forum of the parties. Plaintiffs, of course, prefer this district where the action was filed. Defendants, who bear the burden of demonstrating the need for a transfer, prefer the Northern District of Georgia. Typically, a plaintiff's choice would "not be lightly disturbed." Jumara, 55 F.3d at 879. However, a plaintiff's choice is afforded less weight when the plaintiff selects a forum other than where she resides. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 266 (1981). Plaintiffs in this action are fourteen entities whose principal places of business are located across the country. Only plaintiff AmerisourceBergen is located in this district. Under these circumstances, we will afford plaintiffs' choice of venue here some weight, but not as much as we otherwise would.

The third factor under Jumara, the location where the claims arose, is neutral. AndroGel is sold nationwide. Plaintiffs' claims of overcharges are based on sales that occurred throughout the country, including within this district and the Northern District of Georgia. Thus, this factor is neutral. See Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP, No. 08-4786, 2009 WL 2616816, at *5 (E.D. Pa. Aug. 24, 2009).

We next consider the convenience of the parties as indicated by their relative physical and financial condition. As stated above, plaintiff AmerisourceBergen is located in this district, as is defendant Teva. No party is located within the Northern District of Georgia. All of the parties are corporate entities with the financial ability to litigate this case in either the Eastern District of Pennsylvania or the Northern District of Georgia. Accordingly, this factor is also neutral.

The convenience of non-party witnesses is also neutral or weighs against transfer. Defendants have pointed to three non-party witnesses, former Solvay employees, who are located within the Northern District of Georgia where Solvay was formerly headquartered. However, plaintiffs have pointed to eight potential non-party witnesses who reside within 100 miles of the Eastern District of Pennsylvania, including former employees of Solvay, Par, Watson, Besins, and Teva. Witnesses not located in either district may be presented via video deposition. See James-Velardo

-11-

v. United States, No. 17-1261, 2017 WL 2972690, at *2 (E.D. Pa. July 12, 2017).

As to the location of books and records, there are likely documents relevant to this action possessed by Teva and AmerisourceBergen within this district. However, neither party has offered any reason why records relevant to this action could not be produced within either district. Technological advancements significantly reduce the weight of this factor as files can be easily reproduced and provided in electronic format. See Scanlan v. Am. Airlines Grp., Inc., 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019) (citing Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 200 (E.D. Pa. 2008)). Nor has any party cited practical considerations that would make the trial easier, more expeditious, or less expensive in either district. Accordingly, we conclude that the private factors are neutral as to transfer.

We next consider the public factors articulated in Jumara. The majority of public factors do not weigh heavily in our analysis. Specifically, the enforceability of the judgment, public policies of the fora, and the familiarity of the trial judge with the applicable law are neutral because the causes of action at issue here arise under federal antitrust law. See Scanlan, 366 F. Supp. 3d at 679. As to court congestion, the undersigned has no backlog on his docket.

This court has significant experience and familiarity with issues related to this litigation, including background regarding the development of AndroGel, the '894 patent, and AbbVie's settlements with Teva and Perrigo. See F.T.C. v. AbbVie Inc., No. 14-5151, 2017 WL 4098688, at *1-4 (E.D. Pa. Sept. 15, 2017). There also can be no dispute that Judge Thrash of the Northern District of Georgia has considerable experience relevant to some of plaintiffs' claims here, including the '894 patent and issues related to liability, theories of causation, and the scope of damages in antitrust actions. Both the Northern District of Georgia MDL and the F.T.C. action here have involved significant discovery, including voluminous productions of documents and numerous depositions.

We conclude that both the private and public factors under Jumara are largely neutral as to transfer. Defendants therefore have not met their burden to establish the need for transfer "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); see also Scanlan, 366 F. Supp. 3d at 680.

Defendants have cited additional reasons why transfer is warranted here. First, defendants assert that transfer is mandated under In re Fine Paper Litigation, 632 F.2d 1081 (3d Cir. 1980). In Fine Paper, our Court of Appeals declared that "[i]f a suit is brought by either an assignor or partial assignee, the obligor

[antitrust defendant] has the option of requiring joinder of the necessary parties or resorting to interpleader." 632 F.2d at 1091. Thus, "[u]nless the [defendant] has consented, the partial assignee may not maintain the original suit . . . unless all parties having the collective right to the entire claim are joined in the proceeding." Id. Consequently, the Court of Appeals prohibited an assignee from exercising its right to opt out of a class action because its assignor was in the class. See id. Defendants reason that, under Fine Paper, transfer is necessary to consolidate the claims of each assignor and its assignee in a single forum. Fine Paper, however, merely stands for the proposition that a partial assignee is precluded from opting out of an antitrust class post-certification where the assignor is a member of that class. Id. at 1091; see also United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc., No. 14-02521, 2015 WL 4397396, at *6-7 (N.D. Cal. July 17, 2015). It does not control here where there is no class action certified. Moreover, at least ten out of the fourteen plaintiffs here have not assigned any claims to another entity.[2] Regardless, the four plaintiffs that have assigned portions of their claims to certain retailers proceeding in the Georgia action have since settled those actions. Accordingly, we

---

2. The parties dispute whether FWK Holdings, LLC, a plaintiff here, assigned claims to Meijer, a plaintiff in the Georgia action. Meijer has now settled its claims in the Georgia action.

conclude that Fine Paper does not require transfer under the circumstances presented here.

Defendants further assert that the first-filed doctrine dictates transfer to the Northern District of Georgia. "The first-filed rule requires, absent extraordinary circumstances, that cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (citing E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988)). The rationale for the rule is the desire for sound judicial administration and comity among federal courts of equal stature as well as the desire to avoid the vexation of multiple litigations covering the same subject matter. Id. It is not a "hard and fast rule" but rather a discretionary doctrine permitting the court to do "what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." E.E.O.C., 850 F.2d at 977 (internal citations and quotations omitted).

The present action was filed by different plaintiffs and concerns additional claims which are not present in the actions in Georgia. In addition, plaintiffs have named several entities which are not defendants in the Georgia actions. Thus, the action pending here is not "truly duplicative" of those in Georgia. See Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 333 n.6

(3d Cir. 2007) (quoting <u>Smith v. S.E.C.</u>, 129 F.3d 356, 361 (6th Cir. 1997)).  Given the differences between the two actions, we decline to transfer this action to the Northern District of Georgia based on the first-filed doctrine.

Finally, defendants contend that transfer of this action to the Northern District of Georgia will promote judicial economy and reduce the danger of inconsistent jury verdicts.  According to defendants, a joint trial of plaintiffs' claims here with those asserted in the Northern District of Georgia would be less burdensome to witnesses, as well as jurors and the courts.  As stated above, all but one of the plaintiffs in the Georgia action have now settled their claims.  The remaining plaintiff, Giant Eagle, intends to seek remand to the Western District of Pennsylvania for trial where the action was originally filed.  <u>See</u> <u>Lexecon Inc.</u>, 523 U.S. at 40.  Because there will be no remaining claims in Georgia with which to proceed to a joint trial, the interest of judicial economy and the possibility of inconsistent jury verdicts do not warrant transfer.

Accordingly, the motion of defendants to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) will be denied.[3]

---

3. Par/Paddock, which has joined in the motion to transfer venue over this entire action to the Northern District of Georgia, also seeks in the alternative to sever Counts II and III of the complaint and to transfer those claims. Par/Paddock maintains that these claims are identical to those asserted in the Georgia MDL and further points out that it is not named as a defendant in the remaining counts of the complaint filed here. However, we find that severance is inappropriate given that Count I of the complaint alleges an overarching anticompetitive scheme of conduct by AbbVie which includes the conduct alleged in Counts II and III. Moreover, as noted above, the claims against Par/Paddock in the Northern District of Georgia have since settled. Accordingly, we decline to sever and to transfer a portion of the claims.