**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KING DRUG COMPANY OF FLORENCE, INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES et al.,<br><br>Defendants. | Case No. 2:19-cv-3565-HB |

**OPPOSITION OF DEFENDANTS ACTAVIS, INC. (N/K/A ALLERGAN FINANCE LLC), ACTAVIS HOLDCO U.S., INC., TEVA PHARMACEUTICALS USA, INC., PAR PHARMACEUTICAL, INC., AND PADDOCK LABORATORIES, INC. (N/K/A PADDOCK HOLDINGS), TO PLAINTIFFS' MOTION TO PRECLUDE ABBVIE AND BESINS FROM RELITIGATING FACTS AND ISSUES DECIDED IN *FTC v. ABBVIE***

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................ 1

**BACKGROUND** ........................................ 2

**ARGUMENT** ........................................ 3

I. Collateral Estoppel Would Unfairly Prejudice the Non-Overlapping Defendants, Would Not Conserve Judicial Resources, and Could Result in Inconsistent Outcomes. ........................................ 5

II. Plaintiffs' Proposed Remedies Do Not Solve These Issues ........................................ 10

III. Plaintiffs' Motion Presents Constitutional Concerns ........................................ 12

**CONCLUSION** ........................................ 13

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Blonder-Tongue Laboratories., Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971)....12

*In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-CV-20000, 2018 WL 1796257 (N.D. Ala. Apr. 16, 2018)....4, 11, 13

*Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235 (D. Utah 2001)....4, 5, 8

*Deborah Heart & Lung Center v. Virtua Health, Inc.*, 833 F.3d 399 (3d Cir. 2016)....6

*Freeland v. Iridium World Communications, Ltd.*, CA Nos. 99-1002 et seq., 2005 WL 8149603 (D.D.C. Nov. 22, 2005)....5, 8, 9

*FTC v. AbbVie Inc.*, 107 F. Supp. 3d 428 (E.D. Pa. 2015)....2

*FTC v. Actavis, Inc.*, 570 U.S. 136 (2013)....6

*Hamilton v. Attorney General of U.S.*, 183 F. App'x 196 (3d Cir. 2006)....4

*Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982)....12

*Ibanez v. Abbott Laboratories, Inc.*, CA No. 09-1406, 2011 WL 5572621 (E.D. Pa. Nov. 15, 2011)....4

*Jack Faucett Associates, Inc. v. American Telephone & Telegraph Co.*, 744 F.2d 118 (D.C. Cir. 1984)....4

*In re Light Cigarettes Marketing Sales Practices Litigation*, 691 F. Supp. 2d 239 (D. Me. 2010)....5, 13

*McCarty v. Johns-Manville Sales Corp.*, 502 F. Supp. 335 (S.D. Miss. 1980)....12, 13

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).... passim

*New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education*, 654 F.2d 868 (3d Cir. 1981)....................12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997)....................6

*Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945, 2005 WL 2401645 (E.D.N.Y. Sept. 27, 2005)....................7

*Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991 (D. Ariz. 2012) ....................13

*Smith v. Borough of Dunmore*, 516 F. App'x 194 (3d Cir. 2013) ....................4

*In re Wellbutrin XL Antitrust Litigation*, 868 F.3d 132 (3d Cir. 2017)....................7

**OTHER AUTHORITIES**

18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4465 (3d ed. 2002) ....................9

Restatement (Second) of Judgements §29 (Am. L. Inst. 1982), comment (h) ....................5

## INTRODUCTION

Plaintiffs' motion seeking to collaterally estop Defendants AbbVie[1] and Besins Healthcare, Inc. ("BHI") from relitigating certain issues previously decided in *Federal Trade Commission v. AbbVie Inc.*, No. 2:14-CV-05151 (E.D. Pa.) ("Motion") should be denied because the relief Plaintiffs seek would unfairly prejudice Defendants Teva Pharmaceuticals USA, Inc. ("Teva"), Actavis, Inc. and Actavis Holdco U.S., Inc.,[2] Par Pharmaceutical, Inc. ("Par"), and Paddock Laboratories, Inc. n/k/a Paddock Holdings ("Paddock") (collectively, the "Non-Overlapping Defendants"), and would do so without an offsetting conservation of judicial resources. Though Plaintiffs' Motion is not explicitly directed at the Non-Overlapping Defendants, the Non-Overlapping Defendants write separately to oppose Plaintiffs' Motion because the fairness considerations that are central to the collateral estoppel inquiry weigh heavily against granting the collateral estoppel Plaintiffs seek.

Teva was dismissed from *FTC v. AbbVie* on the pleadings, and the Actavis Defendants, Par, and Paddock had no involvement in that litigation at all. As a result, none of these Non-Overlapping Defendants had a "full and fair" opportunity to litigate the issues that are the subject of Plaintiffs' Motion, yet a number of those issues are centrally relevant to claims brought against the Non-Overlapping Defendants in this litigation. Plaintiffs' Motion acknowledges the potential prejudice to the Non-Overlapping Defendants, proposing two "fixes"—severance or a limiting instruction—both of which would be wholly inadequate to protect the Non-Overlapping Defendants. This Court has significant discretion in determining whether to apply the collateral

---

[1] "AbbVie" refers to Defendants AbbVie Inc., AbbVie Products LLC (f/k/a Abbott Products LLC, f/k/a Abbott Products, Inc., f/k/a Solvay Pharmaceuticals), Abbott Laboratories, and Unimed Pharmaceuticals LLC (f/k/a Unimed Pharmaceuticals).
[2] Actavis, Inc. ("Actavis") was formerly known as Watson Pharmaceuticals, Inc., and is now known as Allergan Finance LLC. Actavis and Actavis Holdco U.S., Inc. are referred to collectively herein as the "Actavis Defendants."

estoppel doctrine; the Non-Overlapping Defendants respectfully submit that particular caution is warranted where, as here, collateral estoppel is sought in litigation involving overlapping issues but non-overlapping defendants,[3] and if granted, would negatively impact and thereby prejudice the non-overlapping defendants' ability to fully and fairly litigate the claims against them. For the reasons set forth below, the Court should deny Plaintiffs' Motion.

## **BACKGROUND**

Plaintiffs' Motion seeks to collaterally estop AbbVie and BHI from litigating certain facts and legal rulings established in *FTC v. AbbVie*. Not one of the Non-Overlapping Defendants had an opportunity to litigate those issues. As this Court is aware, Teva was dismissed from *FTC v. AbbVie* by virtue of the Court's ruling on the defendants' motion to dismiss. *FTC v. AbbVie Inc.*, 107 F. Supp. 3d 428 (E.D. Pa. 2015). *FTC v. AbbVie* did not involve claims against or otherwise relate to the Actavis Defendants, Par or Paddock, who were never parties in that litigation.

Plaintiffs' Motion purports to seek collateral estoppel for questions and issues related to the sham litigation claim that Plaintiffs assert against AbbVie and BHI (Claim IV). *See* Pls.' Mot. to Preclude AbbVie and Besins from Relitigating Facts and Issues Decided in *FTC v. AbbVie* (ECF No. 156) ("Mot."). Plaintiffs summarize their request for estoppel as including findings from *FTC v. AbbVie* that: (i) the patent infringement lawsuit that AbbVie and BHI brought against Perrigo was "objectively baseless"; (ii) the lawsuit concealed an intent to use it as an anticompetitive weapon ("subjective baselessness"); (iii) AbbVie and BHI had monopoly power in the relevant market ("monopoly power"); and (iv) AbbVie and BHI unlawfully maintained their monopoly power by filing their sham lawsuit against Perrigo and thereby delayed Perrigo from marketing its generic AndroGel product. (Pls.' Mem. at 1–2.)

---

[3] Defendants in this action that were not parties to *FTC v. AbbVie* at the time of trial include Actavis, Inc., Actavis Holdco, U.S. Inc., Paddock Laboratories, Inc., Par Pharmaceutical, Inc., and Teva Pharmaceuticals USA, Inc.

But Plaintiffs' Motion also seeks collateral estoppel on 172 individual findings from *FTC v. AbbVie* that are not limited to the issues outlined above. (*See* Mot. App. A.) These findings overlap with issues that would also need to be litigated in connection with the reverse-payment claims against the Actavis Defendants (Claim II), Par and Paddock (Claim III), and Teva (Claim V). Those findings include (but are not limited to): (i) facts underpinning the allegations as to relevant market and monopoly power, and the court's legal ruling on monopoly power (*See, e.g.*, *id*. ¶¶ 1–35, 161–64); (ii) findings that Plaintiffs may later characterize as relevant to Teva's likelihood of success in the patent litigation that Teva settled with AbbVie (*See, e.g.*, *id.* ¶ 127); (iii) statements about AbbVie's and BHI's awareness of the impact of generic competition (*See, e.g.*, *id.* ¶¶ 154–55); (iv) statements about the Federal Drug Administration ("FDA") approval process and assignment of therapeutic equivalence ratings for a Section 505(b)(2) product (*See, e.g.*, *id.* ¶ 169); (v) statements about AndroGel and its uses (*See, e.g.*, *id.* ¶¶ 1–16); and (vi) statements about when Perrigo would have launched a generic product in a "but for" world. (*See, e.g.*, *id.* ¶¶ 170–72.)

Plaintiffs' Motion concedes that the Non-Overlapping Defendants may be prejudiced by the relief Plaintiffs seek. (Pls.' Mem. at 2, 22.) Plaintiffs propose two alternative procedures that they contend will protect the Non-Overlapping Defendants and eliminate jury confusion if their request is granted. *First*, Plaintiffs suggest the Court could sever Claim IV from the remaining claims, and the case would proceed on two tracks. (*Id*. at 22–23.) *Second*, Plaintiffs alternatively suggest that the Court could provide a limiting instruction to the jury. (*Id*. at 23.) As explained below, neither alternative would be sufficient to solve the problems here.

## **ARGUMENT**

Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy

by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Trial courts have "broad discretion to determine when [collateral estoppel] should be applied." *Id.* at 331. Indeed, even if the prerequisites for the application of collateral estoppel are met,[4] trial courts may appropriately deny collateral estoppel when the outcome would be "fundamentally unfair" or would not "promote at least one of the policies underlying the doctrine," which include conserving judicial resources and avoiding inconsistent results. *Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235, 1239 (D. Utah 2001); *see also Smith v. Borough of Dunmore*, 516 F. App'x 194, 199 (3d Cir. 2013) (holding that although the four technical requirements for collateral estoppel were met, the district court did not abuse its discretion by refusing to apply estoppel). The fairness of granting collateral estoppel is a "critical" inquiry, requiring trial courts to evaluate a variety of considerations relevant to "the ultimate question: Would application of [collateral] estoppel be unfair to the defendant?" *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984); *see also Ibanez v. Abbott Lab'ys, Inc.*, CA No. 09-1406, 2011 WL 5572621, at *4 n.8 (E.D. Pa. Nov. 15, 2011) ("[W]hen a plaintiff is using collateral estoppel offensively, courts must also make a finding of fairness.").[5]

Guided by these considerations of fairness, courts have routinely exercised their discretion to deny collateral estoppel where, as here, a finding of preclusion would apply against some defendants, but not others. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000, 2018 WL 1796257, at *4 (N.D. Ala. Apr. 16, 2018) (denying request for collateral

---

[4] The prerequisites for applying collateral estoppel are satisfied when (1) the same issue is being brought, (2) the issue was actually litigated, (3) the issue was previously determined by a valid and final judgment, and (4) the issue was essential to that judgment. *See Hamilton v. Att'y Gen. of U.S.*, 183 F. App'x 196, 199 (3d Cir. 2006).

[5] Plaintiffs' Motion identifies four "additional concerns" that may be considered in deciding a collateral estoppel motion (*see* Pls.' Mem. at 10, 18–22), but "th[o]se examples do not constitute an exhaustive list." *Faucett Assocs., Inc.*, 744 F.2d at 126 (citing *Parklane*, 439 U.S. at 331).

estoppel because it would "greatly prejudice the interests of the Defendants other than Anthem who did not participate in [the prior litigations]"); *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 691 F. Supp. 2d 239, 251 (D. Me. 2010) (denying request for collateral estoppel where "a significant question" existed as to whether it could be applied against one of the two defendants); *Freeland v. Iridium World Commc'ns, Ltd.*, CA Nos. 99-1002 et seq., 2005 WL 8149603, at *4 (D.D.C. Nov. 22, 2005) (denying collateral estoppel because it would prejudice defendants who were not parties to the prior litigation); *see also* Restatement (Second) of Judgements §29 (Am. L. Inst. 1982), comment (h) ("[S]ince the primary consideration in administering the rule of preclusion is fairness rather than consistency, it is inappropriate to invoke preclusion where it will embarrass or hinder a party who has not yet had his day in court.").

Here, the Court should deny Plaintiffs' Motion because even though the Motion is not directed at the Non-Overlapping Defendants, granting the collateral estoppel that Plaintiffs request would be "fundamentally unfair" to them and, in view of the likelihood of juror confusion and failure to conserve judicial resources, would not "promote . . . the policies underlying the [collateral estoppel] doctrine." *Coburn*, 174 F. Supp. 2d at 1239. Moreover, Plaintiffs' proposed "procedures" do not cure the prejudice to the Non-Overlapping Defendants.

## I. Collateral Estoppel Would Unfairly Prejudice the Non-Overlapping Defendants, Would Not Conserve Judicial Resources, and Could Result in Inconsistent Outcomes.

Plaintiffs seek to estop AbbVie and BHI from relitigating 172 individual findings made in *FTC v. AbbVie*, a litigation in which none of the Non-Overlapping Defendants "had a full and fair opportunity to litigate" those issues. *Parklane*, 439 U.S. at 328. And while Plaintiffs frame their request as one aimed at their sham litigation claim against AbbVie and BHI (Claim IV), many of the 172 findings are also relevant to the separate reverse-payment claims that Plaintiffs have brought against the Non-Overlapping Defendants (Claims II, III, and V).

The reverse-payment claims are Sherman Act Section 1 "rule of reason" claims, meaning that Plaintiffs must prove that Defendants entered into an agreement (here, the patent litigation settlements) that unreasonably restrained trade. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 156 (2013). Under the "rule of reason," an antitrust plaintiff must prove that the challenged agreement had "significant anticompetitive effects" in the relevant antitrust market, which in turn requires proof of the scope of that relevant antitrust market and the defendants' power within it.[6] *Id.* at 158; *see also Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 403 (3d Cir. 2016).

Plaintiffs acknowledge that their Complaint alleges a narrower relevant market than was found in *FTC v. AbbVie*; while they seek to estop AbbVie and BHI from relitigating the market definition for purposes of the sham litigation claim, Plaintiffs reserve for themselves "all rights to seek to prove [a] narrower market [definition]" later on in this case. (Mot. App. A ¶ 161 n.7.) Moreover, the findings in *FTC v. AbbVie* are focused on the time period between 2009 and 2014, whereas Plaintiffs' reverse-payment claims in this case go back to 2006, thus enhancing the possibility of confusion and inconsistent outcomes. Market definition will thus be a key issue for Plaintiffs' reverse-payment claims against the Non-Overlapping Defendants.

Given that market definition and market power are elements of both the sham litigation claim and the reverse-payment claims, it seems unavoidable that in presenting their case on the reverse-payment claims, Plaintiffs would argue to the jury that certain facts—for example, facts pertaining to the relevant market and AbbVie's power within that market—were conclusively established against AbbVie and BHI. Of course, because the claims against the Non-

[6] Courts apply the same relevant market analysis in evaluating both Sherman Act Section 1 rule of reason claims and Sherman Act Section 2 claims. *See, e.g.*, *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) (affirming district court's dismissal of Sherman Act Section 1 and Section 2 claims for failure to allege a relevant market).

Overlapping Defendants were not at issue in *FTC v. AbbVie*, the Non-Overlapping Defendants did not have the opportunity to fully and fairly participate in litigating the appropriate market definition or whether market power existed. Allowing Plaintiffs to suggest to the jury that these issues have already been decided against two of the six defendants in this litigation for a certain time period would prejudice the Non-Overlapping Defendants and "confuse the jury, making administration of the case difficult[.]" *Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945, 2005 WL 2401645, at *1 (E.D.N.Y. Sept. 27, 2005).

While market definition and market power are the most obvious examples, these same concerns about fairness and prejudice are not limited to those issues—indeed, several other examples underscore the breadth of overlapping issues here. *First*, Plaintiffs' Motion seeks estoppel on many issues related to the '894 patent—the same patent that was asserted against each of the generic Defendants in the patent litigations whose settlements Plaintiffs challenge here. (*See*, *e.g.*, Mot. App. A ¶¶ 93–94, 127, 155.) Even a cursory glance at *FTC v. Actavis* and other reverse-payment cases (*e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132 (3d Cir. 2017)) reveals that patent-related issues are hotly contested in reverse-payment claims, particularly those brought by private plaintiffs. So too will findings about AbbVie's general awareness of how generic competition might impact the market for branded AndroGel plainly be relevant to Plaintiffs' reverse-payment claims. (Mot. App. A ¶¶ 154–55.) A collateral estoppel finding would thus require the jury to make certain assumptions about the '894 patent's scope with respect to AbbVie and BHI while hearing evidence on the scope of the patent with respect to claims against the Non-Overlapping Defendants. This is particularly unfair for Teva, which will be litigating the merits of the prosecution history estoppel issues at the same time that the

jury is told that certain facts are established regarding the merits of the prosecution history estoppel issues with respect to Perrigo.

Plaintiffs also seek to preclude AbbVie and BHI from relitigating findings related to the timing of FDA action regarding a Section 505(b)(2) drug product and how that would impact product entry. (*Id.* ¶ 169.) A Section 505(b)(2) application is precisely the type of new drug application that Plaintiffs allege Teva had filed. (Compl. ¶ 224.) The timing of FDA approvals and whether Teva would have marketed its 505(b)(2) drug product will be a critical aspect of Teva's defense to Plaintiffs' claims. The Non-Overlapping Defendants had no opportunity to litigate the context or veracity of these factual findings. Thus, allowing the Plaintiffs to present against AbbVie and BHI a finding about the time required for the FDA to make decisions about a 505(b)(2) application will inherently impact Teva's ability to adequately present its defense.

While Plaintiffs claim that granting collateral estoppel will conserve judicial resources, no savings would be realized because the reverse payment claims against the Non-Overlapping Defendants allegedly involve the same products and geographies as those at issue in the *FTC v. AbbVie* sham litigation claim. *See Coburn*, 174 F. Supp. 2d at 1239 (denying collateral estoppel on findings of general causation because "significant time would [not] be saved" where general causation would "continue" to directly relate to defendant's specific causation defense). Therefore, regardless of how the collateral estoppel motion is decided, resolution of Claims II, III, and V (the reverse-payment claims against the Actavis Defendants, Par and Paddock, and Teva) would require consideration of the same questions around relevant market and market power. *See Freeland*, 2005 WL 8149603, at *4 (holding that "application of collateral estoppel would not promote judicial economy" because defendants who were not parties to the prior litigation would likely have to litigate the same issue as the one being estopped against the

defendant who was a party); *see also* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4465 (3d ed. 2002) ("Whatever values may be gained by nonmutual preclusion are substantially diminished when the need to try related issues requires consideration of much the same evidence as bears on the issue tendered for preclusion.").

Finally, granting Plaintiffs' Motion carries with it the risk of inconsistent judgments within the same case. If, for example, the jury were to conclude that the relevant market for the reverse-payment claims were narrower or broader than the one established for the sham litigation claim, the parties would be left with the absurd result of multiple relevant market definitions concerning the same products and geographies in the same case. Such a result could ultimately lead to more litigation and confusion, and could undermine the public's confidence in the outcome of this litigation. *See Freeland*, 2005 WL 8149603, at *4 (declining to estop a defendant from relitigating findings that its former subsidiary made fraudulent representations because doing so would either result in "inconsistent judgments" or prejudice the former subsidiary and other defendants who were not parties to the prior litigation).

The risks of unfair prejudice, confusion of the issues, and inconsistent judgments raised by Plaintiffs' Motion echo a similar motion made by the Federal Trade Commission ("FTC") in the FTC's litigation challenging the 2006 patent litigation settlements in the Northern District of Georgia, which that court correctly denied. *See* **Ex. A**, Order Denying Pl.'s Mot. Seeking Collateral Estoppel Against AbbVie Products LLC f/k/a Solvay Pharmaceuticals Inc., *FTC v. Actavis, Inc. et al.*, 1:09-CV-955-TWT, ECF No. 857 (N.D. Ga. Feb. 27, 2019) ("N.D. Georgia Order"). In the Georgia litigation, the FTC sought to estop one defendant (Solvay), but not the other (Actavis, Inc.'s predecessor, Watson Pharmaceuticals, Inc.) from relitigating certain findings made in *FTC v. AbbVie*—including market definition. In opposing that motion, the

Georgia defendants raised many of the same concerns as are raised here. *See* **Ex. B**, Defs.' Opp'n to Mot. Seeking Collateral Estoppel Against AbbVie Products LLC f/k/a Solvay Pharmaceuticals Inc., *FTC v. Actavis, Inc. et al.*, 1:09-CV-955-TWT, ECF No. 801 (N.D. Ga. Jan. 25, 2019). Judge Thrash denied the FTC's request for estoppel, reasoning that it "would not result in cost savings to any party and would not promote judicial economy. And, granting the motion would cause more confusion than it would eliminate." **Ex. A**, N.D. Georgia Order. Plaintiffs have presented no compelling reason why this Court should decide the instant Motion differently.

## II. Plaintiffs' Proposed Remedies Do Not Solve These Issues.

Plaintiffs expressly acknowledge the "risk of confusion and prejudice to the other defendants not named in [the sham litigation claim]," and offer two "procedures" that they contend would alleviate this prejudice. (Pls.' Mem. at 2.) But neither "procedure" eliminates the prejudice and unfairness that the Non-Overlapping Defendants would face if Plaintiffs' Motion is granted; indeed, the proposed "procedures" would only serve to increase juror confusion.

Plaintiffs first propose to sever the sham litigation claim from the remaining claims and have the case proceed on two separate tracks. (*Id*. at 22–23.) Regardless of whether Plaintiffs would seek to empanel a separate jury for the severed claim or proceed with the same jury for all claims, neither alternative would save judicial resources because the parties would need to litigate the same issues in the reverse payment trial regardless of the outcome of Plaintiffs' Motion.[7] Indeed, supposing the claims were severed and the sham litigation claim were tried first, the Non-Overlapping Defendants would face the same risk of prejudice as described above: if Plaintiffs were to prevail in the trial of the sham litigation claim, they could still be expected to

[7] To the extent that Plaintiffs imply that separate juries would be impaneled for the severed claims, such a remedy obviously operates to *increase*, not decrease, the judicial resources expended in the litigation.

present the jury at the second trial with findings that certain issues were conclusively decided against AbbVie and BHI, leaving the jury to speculate as to why the same findings should not be made against the Non-Overlapping Defendants. Additionally, a separate Perrigo trial would necessarily require a determination as to whether and when Perrigo would have entered and the effect that potential entry would have had on sales and prices. This issue—who would enter, when, and the impact that the entry would have—is relevant to *every other claim in this litigation*, and the jury in the second trial would need to determine these issues *all over again*. Severance simply fails to resolve the fairness concerns presented by Plaintiffs' Motion.

Plaintiffs next suggest that the Court could provide a limiting instruction to protect against any unfairness to the Non-Overlapping Defendants and mitigate potential juror confusion. (*Id.* at 23.) A limiting instruction, however, risks confusing the jury even more. Jurors would be expected to understand that certain facts are established with respect to AbbVie and BHI (without understanding why), but that those same facts are not established with respect to the other claims or the Non-Overlapping Defendants, despite overlapping parties and elements. Indeed, the risk of juror confusion is even *higher* with a limiting instruction than with severance because jurors, in the same trial, would be forced to compartmentalize facts and findings depending on the claims and parties at issue. The claims Plaintiffs have brought already involve extraordinarily complex issues of patent law, antitrust law, and economics, without the added complexity of the limiting instruction that Plaintiffs propose. As one court succinctly put it, "[i]t would likely be confusing if the court instructed the jury to apply certain market-related findings against [one defendant] while also instructing the jury to make its own trial evidence-based, independent findings on similar issues when deliberating over the claims against the other Defendants." *In re Blue Cross Blue Shield*, 2018 WL 1796257, at *4.

For these reasons, Plaintiffs' proposed "fixes" do not remedy the unfairness and prejudice that would flow from granting Plaintiffs' request for collateral estoppel.

**III. Plaintiffs' Motion Presents Constitutional Concerns.**

Separate and apart from the fairness concerns articulated above, Plaintiffs' Motion also raises Constitutional concerns. In *Parklane*, the Supreme Court recognized that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane*, 439 U.S. at 327 n.7; *Blonder-Tongue Lab'ys., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); *see also N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd.*, 654 F.2d 868, 876 (3d Cir. 1981); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) ("The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution.").

While Plaintiffs' Motion is not explicitly directed at the Non-Overlapping Defendants, the relief sought could deprive each of them their Fifth Amendment due process rights, just as it would if the Motion were to seek collateral estoppel against them directly. *See McCarty v. Johns-Manville Sales Corp.*, 502 F. Supp. 335, 339 (S.D. Miss. 1980) ("[W]e admittedly have several defendants who were not involved in the [prior] decision, and would clearly be denied their due process rights . . . should the court apply collateral estoppel . . . ."; applying collateral estoppel principles under Mississippi law but concluding the outcome would not differ under federal collateral estoppel principles); *Hardy*, 681 F.2d 334 at 340 (finding that defendants who settled before trial in the prior action were entitled to "their day in court" in subsequent action). The Non-Overlapping Defendants had no ability to litigate the issues on which Plaintiffs now seek estoppel in *FTC v. AbbVie*, and the risk that findings from that case would make their way into the claims against them warrants denial of Plaintiffs' Motion for all the reasons stated above.

Plaintiffs' Motion also raises serious Seventh Amendment concerns around the Non-Overlapping Defendants' right to a jury trial.  The findings that are the subject of Plaintiffs' Motion were made in a bench trial, not a jury trial.  And while *Parklane* recognized that application of collateral estoppel generally does not violate the Seventh Amendment right to trial by jury, (439 U.S. at 335), courts regularly consider the lack of a jury trial in the prior litigation as a factor in weighing the overall fairness of a collateral estoppel request.  *See In re Blue Cross Blue Shield*, 2018 WL 1796257, at *4 (concluding that the lack of a jury trial in prior litigation is a "sub-factor that weighs against applying collateral estoppel here"); *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 691 F. Supp. 2d at 251 (giving weight to "the deprivation of a jury trial" in collateral estoppel analysis); *Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991, 998 (D. Ariz. 2012) (stating the "lack of a jury trial . . . weighs against applying" collateral estoppel); *McCarty*, 502 F. Supp. at 339 (recognizing defendants' "rights to a jury trial" as one of the factors weighing against the use of collateral estoppel).  Here, to establish facts in this litigation that were established in a prior bench trial against some of the defendants on overlapping issues, when none of the Non-Overlapping Defendants participated in that prior bench trial, is both unfair and puts at risk their right to have their case heard by an impartial jury.  These Constitutional risks additionally weigh in favor of denying Plaintiffs' Motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Preclude AbbVie and Besins from Relitigating Facts and Issues Decided in *FTC v. AbbVie*.

*[Signatures on following pages]*

Dated: November 19, 2021

*/s/ Joseph O. Larkin*
Joseph O. Larkin (PA Bar No. 206047)
Kimberly A. LaMaina (PA Bar No. 88068)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE 19801
Telephone (202) 651-3000
joseph.larkin@skadden.com
kimberly.lamaina@skadden.com

Steven C. Sunshine (admitted pro hac vice)
Julia K. York (admitted pro hac vice)
Ryan J. Travers (admitted pro hac vice)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
Telephone (202) 371-7000
Facsimile (202) 393-5760
steven.sunshine@skadden.com
julia.york@skadden.com
ryan.travers@skadden.com

*Counsel for Defendants Actavis, Inc.; Actavis Holdco, U.S., Inc.; and Teva Pharmaceuticals USA, Inc.*

*/s/ Peter M. Ryan*
Peter M. Ryan (PA Bar No. 81816)
Cozen O'Connor, P.C.
One Liberty Place
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone (215) 665-2130
Facsimile (215) 701-2157
pryan@cozen.com

Heidi M. Hubbard (admitted pro hac vice)
Benjamin Greenblum (admitted pro hac vice)
Sarah F. Kirkpatrick (admitted pro hac vice)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street N.W.

Washington, D.C. 20005
Telephone (202) 434-5000
Facsimile (202) 434-5029
hhubbard@wc.com
bgreenblum@wc.com
skirkpatrick@wc.com

*Counsel for Defendants Par Pharmaceutical, Inc., Paddock Laboratories, Inc. n/k/a Paddock Holdings*

**CERTIFICATE OF SERVICE**

I certify that on November 19, 2021, the foregoing document was filed electronically using the United States District Court for the Eastern District of Pennsylvania's ECF system, which constitutes service of the foregoing document pursuant to Local Rule 5.1.2 8(a). The document is available for reviewing and downloading from the Court's ECF system.

*/s/ Joseph O. Larkin*

*Counsel for Defendant Actavis, Inc.; Actavis Holdco, U.S., Inc.; and Teva Pharmaceuticals USA, Inc.*