IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KING DRUG CO. OF FLORENCE, INC., :      CIVIL ACTION
et al.                               :
                 v.              :
                              :
ABBOTT LABORATORIES, et al.     :      NO. 19-3565

MEMORANDUM

Bartle, J.                                      March 23, 2022

Plaintiffs, King Drug Co. of Florence Inc., AmerisourceBergen Corp., AmerisourceBergen Drug Corp., Bellco Drug Co., H.D. Smith LLC, Cardinal Health Inc., Harvard Drug Group LLC, McKesson Corp., J.M. Smith Corp., Burlington Drug Co., North Carolina Mutual Wholesale Drug Co., Dakota Drug Inc., Value Drug Co., and FWK Holdings LLC are direct-purchase wholesalers of pharmaceutical drugs.  They bring this civil antitrust action against defendants Abbott Laboratories, AbbVie Inc., AbbVie Products LLC, and Unimed Pharmaceuticals LLC (collectively "AbbVie"), Besins Healthcare Inc. ("Besins"), Actavis Holdco U.S. Inc., Actavis Inc., Paddock Laboratories Inc., Par Pharmaceutical Inc., and Teva Pharmaceuticals USA Inc. ("Teva") who are brand and generic drug manufacturers.  Plaintiffs allege that they were denied the opportunity to purchase lower-priced generic versions of the pharmaceutical

product AndroGel 1% due to defendants' anticompetitive conduct under the Sherman Act, 15 U.S.C. §§ 1 et seq.

This action follows litigation brought by the Federal Trade Commission ("FTC") against defendants AbbVie Inc., Abbott Laboratories, Unimed Pharmaceuticals LLC, and Besins Healthcare Inc. for violation of § 5(a) of the Federal Trade Commission Act ("FTC Act") and § 2 of the Sherman Act in FTC v. AbbVie Inc., et al., Civil Action No. 14-5151.  Before the court is the motion of plaintiffs to preclude defendants AbbVie and Besins from relitigating certain facts and issues decided in that underlying action.

I

AndroGel 1% is a brand-name transdermal testosterone gel product developed by AbbVie[1] and Besins.[2]  The United States Food and Drug Administration ("FDA") granted approval to AndroGel 1% in 2000.  AbbVie and Besins together own U.S. Patent No. 6,503,894 ("'894 patent") for AndroGel 1%.  The complaint alleges that defendant AbbVie, together with other defendants,

---

1.  The court will use "AbbVie" to generally refer to all of the subsidiaries and predecessors of AbbVie Inc., including Solvay Pharmaceuticals LLC, Abbott Products LLC, AbbVie Products LLC, Unimed Pharmaceuticals LLC, and Abbott Laboratories.

2.  The facts are taken from the complaint and this court's opinions in the underlying action.  See Civil Action No. 14-5151.

engaged in a scheme from at least 2007 to 2014 to delay and to exclude generic competition for AndroGel 1%.

Specifically, the complaint makes the following claims: (1) the unlawful maintenance and extension of a monopoly through an overarching conspiracy in violation of 15 U.S.C. § 2 against AbbVie (Count I); (2) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Actavis (Count II); (3) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Par/Paddock (Count III); (4) the unlawful maintenance and extension of a monopoly through sham litigation in violation of 15 U.S.C. § 2 against AbbVie and Besins (Count IV); and (5) an anticompetitive reverse payment agreement in violation of 15 U.S.C. § 1 against AbbVie and Teva (Count V).

The present motion of plaintiffs to preclude relates to Count IV against defendants AbbVie and Besins which alleges that these defendants illegally maintained their monopoly over AndroGel 1% by filing sham patent litigation against Perrigo Co. ("Perrigo").

In 2011, AbbVie and Besins filed suits for infringement of the '894 patent against potential competitors Teva and Perrigo who each sought approval from the FDA to manufacture a generic testosterone 1% gel.  These suits triggered thirty-month stays under the Hatch-Waxman Act,

-3-

21 U.S.C. § 355, which precluded final approval by the FDA of the generic testosterone product for that period of time or until the infringement action is resolved in the district court, whichever occurred first.

In 2014, the FTC brought suit against AbbVie and Besins in this district court for injunctive and equitable relief pursuant to § 13(b) of the FTC Act for violation of § 5(a) of the FTC Act which prohibits "[u]nfair methods of competition in or affecting commerce."  See Civil Action No. 14-5151.  The FTC sought a disgorgement of profits by AbbVie and Besins and an injunction to prevent them from engaging in similar misconduct.

As part of that action, the FTC alleged that AbbVie and Besins maintained an illegal monopoly through the filing of sham patent infringement lawsuits against Teva and Perrigo to delay entry into the market of their generic versions of AndroGel 1%.  To prove its case, the FTC had to establish that: (1) the lawsuits filed by defendants against Teva and Perrigo were objectively baseless; (2) defendants subjectively intended to file such baseless lawsuits; and (3) defendants possessed monopoly power in the relevant market.  See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993).  This court ruled that the lawsuits against Teva and Perrigo were objectively baseless and granted summary

-4-

judgment in favor of the FTC on that issue.  See FTC v. AbbVie Inc., 2017 WL 4098688 (E.D. Pa. Sept. 15, 2017).

Following a non-jury trial, this court found that it was the subjective intent of the decision-makers for AbbVie and Besins to file sham lawsuits to delay Teva and Perrigo from entering the market with lower-priced generic products and this sham litigation was used to maintain monopoly power in the relevant market.  See FTC v. AbbVie Inc., 329 F. Supp. 3d 98 (E.D. Pa. 2018).  This court further found that AbbVie and Besins were liable for disgorgement of ill-gotten profits in the amount of $448 million as well as prejudgment interest.  As for the request for injunctive relief, this court determined that the FTC presented no evidence that AbbVie and Besins were currently violating antitrust laws or about to violate antitrust laws and that there was no basis to conclude that their misconduct was likely to reoccur.  Accordingly, no injunctive relief was granted.

On September 30, 2020, our Court of Appeals reversed the finding that the litigation against Teva was a sham but affirmed this court's finding that the litigation against Perrigo was a sham.  See FTC v. AbbVie Inc., 976 F.3d 327 (3d Cir. 2020).  The Court also upheld this court's finding that AbbVie and Besins had monopoly power in the relevant market.

The Court of Appeals affirmed this court's denial of injunctive relief.  However, it reversed this court's decision that AbbVie and Besins were required to disgorge $448 million in ill-gotten profits.  The Court determined that § 13(b) of the FTC Act does not confer the power on a court to order disgorgement and thus ruled that § 13(b) is limited to ordering injunctive relief and not disgorgement of profits.  The Court noted that, at the time of its decision, the circuits were split on whether courts may order disgorgement under § 13(b) of the FTC Act.  That issue had yet to be resolved by the Supreme Court.

On July 9, 2020, after our Court of Appeals heard oral argument in the underlying action but prior to its decision on September 30, 2020, the Supreme Court granted certiorari in AMG Capital Management, LLC v. FTC.  See 141 S. Ct. 1341 (2021). That case was an action brought by the FTC against payday lenders for unfair or deceptive practices under § 5(a) and § 13(b) of the FTC Act.  The FTC in AMG Capital sought a permanent injunction under § 13(b) to prevent future violations of the Act by the lenders and asked the court to award monetary relief in the form of restitution and disgorgement pursuant to that section.  The Supreme Court held in its decision handed down on April 22, 2021 that § 13(b) "does not grant the Commission authority to obtain equitable monetary relief."

Id. at 1352.  It explained that § 13(b) is limited to
prospective, not retrospective, relief.

                              II

          In plaintiffs' preclusion motion before this court,
they argue that the allegations of Count IV of the complaint
against defendants AbbVie and Besins rely on the same evidence
and law as did the allegations in Count I in the underlying
action which alleged that AbbVie and Besins engaged in sham
patent litigation against Perrigo and Teva.  Plaintiffs maintain
that this court has already found in the underlying case that
the patent litigation against Perrigo was objectively baseless,
that defendants AbbVie and Besins had the subjective intent to
file that baseless lawsuit, and that these two defendants
possessed monopoly power in the relevant market.  Plaintiffs
assert that these findings were necessary and essential to the
judgment in favor of the FTC in this court and further contend
that these findings were all affirmed on appeal.  Plaintiffs
thus urge that defendants AbbVie and Besins should be precluded
from relitigating the facts and law relating to Count IV in this
action as those issues have already been decided against these
defendants.

          As stated in the Second Restatement of Judgments,
"[w]hen an issue of fact or law is actually litigated and
determined by a valid and final judgment, and the determination

                              -7-

is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments § 27 (1980).  Courts, including the Supreme Court and our Court of Appeals, have consistently applied this definition in the Second Restatement when determining whether an issue is precluded. See e.g., Bobby v. Bies, 556 U.S. 825, 834 (2009); Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006).

Issue preclusion, otherwise known as collateral estoppel, can be used "'offensively' in a new federal suit against the party who lost on the decided issue in the first case."  Allen v. McCurry, 449 U.S. 90, 95 (1980).  This means that a plaintiff can "seek[] to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979).

Four standard requirements for issue preclusion are: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Jean Alexander, 458 F.3d at 249.  Courts also look to "whether the party being precluded 'had a full and fair

-8-

opportunity to litigate the issue in question in the prior action,' . . . and whether the issue was determined by a final and valid judgment."  Id.

The Supreme Court in a unanimous opinion in Bobby v. Bies most recently explained that "issue preclusion is a plea available to prevailing parties.  The doctrine bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding."  Bobby, 556 U.S. at 829.  "If a judgment does not depend on a given determination, relitigation of that determination is not precluded."  Id. at 834.  The Court further explained that "[i]ssue preclusion, in short, does not transform final judgment losers, in civil or criminal proceedings, into partially prevailing parties."  Id. at 829.

Defendants AbbVie and Besins do not dispute that in the underlying action they actually litigated whether the patent infringement lawsuit against Perrigo was a sham litigation. They also do not dispute that they were fully represented in that case.  They do, however, disagree that this court's findings and legal conclusions against them regarding the sham litigation were essential to the final outcome of that action since in their view the FTC did not prevail on appeal.

While the Supreme Court in Bobby did not specifically define the term "prevailing party," it explained that "final judgment losers" in both the civil and criminal context cannot

-9-

be transformed into "partially prevailing parties" for purposes
of issue preclusion.  Id.  This echoes the language of the
Second Restatement which refers to issues of fact and law
determined "by a valid and final judgment."  Thus, based on the
Supreme Court's decision in Bobby and the Second Restatement,
issue preclusion prevents a defendant from relitigating an issue
only when there is a valid and final judgment against that
defendant predicated on that issue.

     The Supreme Court similarly defined prevailing party
in Hewitt v. Helms regarding a claim for attorney fees in a case
under 42 U.S.C. § 1983.  482 U.S. 755 (1987).  The Court
explained that to be a prevailing party the plaintiff who sought
attorney fees in Hewitt must have "receive[d] at least some
relief on the merits of his claim before he can be said to
prevail."  Id. at 760.  The Court, however, noted that plaintiff
had not received any relief, either injunctive, declaratory, or,
because of defendants' qualified immunity, equitable monetary
relief.  Plaintiff did not even obtain relief without a formal
judgment, as in a consent decree or settlement.  The Supreme
Court therefore determined that he was not a prevailing party.

     In so finding, the Court explained that "[i]n all
civil litigation, the judicial decree is not the end but the
means.  At the end of the rainbow lies not a judgment, but some
action . . . by the defendant that the judgment produces – the

-10-

payment of damages, or some specific performance." <u>Id.</u> at 761.
A proper judicial resolution of a case "rather than an advisory
opinion – is in the settling of some dispute which affects the
behavior of the defendant towards the plaintiff." <u>Id.</u>

As the Supreme Court wrote in <u>Bobby</u>, "[a]
determination ranks as necessary or essential only when the
final outcome hinges on it." 556 U.S. at 835. This court's
findings and legal conclusions regarding the sham litigation
were not essential to the final judgment of the Court of Appeals
which determined that the FTC was not entitled to any relief.
The final judgment after appeal in the underlying action did not
depend on whether AbbVie and Besins engaged in sham litigation.
Thus, "relitigation of that determination is not precluded."
<u>Id.</u> at 834.

The fact that our Court of Appeals affirmed this
court's findings regarding the sham litigation claim before
denying the FTC any relief does not transform the FTC into a
"partially prevailing part[y]." <u>See</u> <u>Bobby</u>, 556 U.S. at 829.
The Supreme Court in <u>Hewitt</u> explained that a "favorable judicial
statement of law in the course of litigation that results in
judgment against the plaintiff does not suffice to render him a
'prevailing party.'" 482 U.S. at 763. Thus, plaintiffs here
cannot rely on issue preclusion against defendants AbbVie and

Besins because the FTC was not the prevailing party against AbbVie and Besins in the underlying lawsuit.

It should also be noted that at the time that our Court of Appeals issued its opinion, the circuits were split on whether damages were permissible under § 13(b), and the Supreme Court had granted certiorari but not yet decided this issue. It therefore was in the interest of judicial economy for our Court of Appeals to review this court's findings in detail and decide each issue before ultimately ruling against the FTC should the Supreme Court have concluded that damages are authorized under § 13(b).

Accordingly, plaintiffs here cannot benefit from issue preclusion as the FTC was not a prevailing party in the underlying action. The issue of sham litigation as decided by this court in the prior action was not determined "by a valid and final judgment" and was not "essential to the judgment." Those findings and legal conclusions are not binding in this action. The motion of plaintiffs to preclude relitigation of the facts and issues in Count IV of the complaint against defendants AbbVie and Besins will be denied.