IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KING DRUG COMPANY OF FLORENCE,      :            CIVIL ACTION
INC., ET AL.                        :
                                    :
        v.                          :
                                    :            NO. 19-3565
ABBOTT LABORATORIES, ET AL.         :


MEMORANDUM

Bartle, J.                                    March 27, 2023

            This is an antitrust action in which plaintiffs have

sued the defendants for anticompetitive conduct and monopoly

under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, in

connection with defendants' manufacture and sale of Androgel, a

testosterone replacement drug.  Plaintiffs have filed a motion

asking the court to undertake an in camera review of documents

which they assert are subject to the crime-fraud exception to

the attorney-client privilege and attorney work product

doctrine.  According to plaintiffs, they have reason to believe

that the documents will show the fraudulent conduct of

defendants AbbVie, Inc. and Besin Healthcare, Inc., and their

attorneys in the filing of a sham action, Abbott Products, Inc.

v. Perrigo Company, No. 11-CV-06357 (D.N.J.), as part of their

alleged anticompetitive and monopolistic strategies.[1]   That action alleged that Perrigo Company infringed their '894 patent for Androgel.

I

In order for an action to be a sham, it must be established that it was: (1) objectively baseless, that is "no reasonable litigant could realistically expect success on the merits" and (2) the litigant's subjective motivation for filing the objectively baseless lawsuit was something besides success on the merits.  FTC v. AbbVie, Inc., 976 F.3d 327, 370 (3d Cir. 2020).  For example, subjective motivation to impose expense and delay on a party's entry into the market is not a motivation to assert a patent in good faith.  See id. at 371.  The Court of Appeals of the Third Circuit, in the above lawsuit, affirmed this court's decision that the Perrigo action was a sham.  See id. at 366.  This court has reiterated the same holding in this pending lawsuit.  See King Drug Co. of Florence v. Abbott Lab'ys, No. CV 19-3565, 2023 WL 324505, at *6 (E.D. Pa. Jan. 19, 2023).

The attorney-client privilege is one of the oldest privileges known to the common law.  See U.S. v. Zolin, 491 U.S.

---

1.   Abbott Products, Inc. and Besin Healthcare, Inc. co-owned the patent and were plaintiffs in the action against Perrigo. Since that time, as a result of various corporate changes, AbbVie, Inc. now owns Abbott's interest in Androgel.

554, 562 (1989).  It allows for the full and frank discussion

between the attorney and client and fosters the observance of

law and the administration of justice.  See id.  Integral to the

privilege is the freedom of a client to disclose and discuss

past wrongdoing with his or her attorney without fear that the

veil of secrecy will be lifted.  The privilege comes at a cost

as it protects from discovery relevant information in the search

for truth.  Nonetheless, the privilege is not absolute.  While

it applies to past wrongdoing, it does not apply to future

wrongdoing.  The crime-fraud exception to the privilege

authorizes disclosure of communications between an attorney and

client made in furtherance of a future crime or future fraud.

See In re Grand Jury, 705 F.3d 133, 153 (3d Cir. 2012).

        "The work-product doctrine . . . protects from

discovery materials prepared or collected by an attorney 'in the

course of preparation for possible litigation.'"  In re Grand

Jury Investigation, 599 F.2d 1224, 1228 (3d Cir. 1979) (quoting

Hickman v. Taylor, 329 U.S. 495, 505 (1947)).  It allows

attorneys to "work with a certain degree of privacy, free from

unnecessary intrusion by opposing parties and their counsel."

Hickman, 329 U.S. at 510.  Work product, however, is not

protected when it is used in furtherance of an alleged crime or

fraud.  See In re Grand Jury, 705 F.3d at 153.  It is treated in

the same way as the attorney-client privilege for purposes of the crime-fraud exception.  See id.

II

Defendants argue that fraud within the meaning of the crime-fraud exception does not encompass the conduct of attorneys or clients who file a sham patent infringement action. Defendants primarily rely on two decisions of the United States Court of Appeals for the Federal Circuit: Unigene Lab'ys, Inc. v. Apotex, Inc., 655 F.3d 1352 (Fed. Cir. 2011), and In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000). Defendants maintain that this court must follow the law of the Federal Circuit on the crime-fraud exception rather than the law enunciated by the Court of Appeals of the Third Circuit.  In defendant's view, fraud for purposes of the crime-fraud exception is limited to common law fraud which requires not only a material misrepresentation but also reliance.  To the extent plaintiffs rely on fraud on the court, defendants assert that such fraud only encompasses egregious conduct such as bribing of a judge or juror or entering a false document into the record and does not extend to the filing or pursuit of a meritless lawsuit.

In Spalding Sports, the District Court had before it a patent infringement action.  Defendant maintained that plaintiff had committed fraud on the patent office in obtaining the patent

-4-

in issue and sought the communications between the inventor and
his patent attorneys pursuant to the crime-fraud exception to
the attorney-client privilege.  The District Court granted
relief requested by defendant, but the Federal Circuit granted a
writ of mandamus to prevent discovery.  The Federal Circuit held
that common law or "Walker Process"[2] fraud and not simply
inequitable conduct is required to break the attorney-client
privilege.  The Court concluded that defendant had not made out
a prima facie showing that the invention record was made in
furtherance of fraud during the patent prosecution.  In doing
so, the Court held that its law applied and not that of the
First Circuit where the District Court sat.  The Federal Circuit
explained that its law controls on issues of substantive patent
law, on procedural issues if the issue pertains to patent law as
well as when the issue "bears an essential relationship to
matters committed to our exclusive [jurisdiction] by statute, or
if it clearly implicates the jurisprudential responsibilities of
this court in a field within its exclusive jurisdiction."  In re
Spalding Sports Worldwide, Inc., 203 F.3d at 803 (quoting
Midwest Indus., Inc. v. Karavan, 175 F.3d 1356, 1359 (Fed. Cir.
1999)).

_____

2.    In Walker Process Equip., Inc. v. Food Mach. & Chem. Co.,
382 U.S. 172 (1965), the Supreme Court held that the enforcement
of a patent procured by fraud on the Patent Office may
constitute a violation of § 2 of the Sherman Act.

The second Federal Circuit case on which defendants rely is Unigene Laboratories.  That too was a patent infringement action.  Defendants moved to obtain documents based on the crime-fraud exception.  Defendants asserted that plaintiffs had failed to provide certain prior art to the Patent Office and had presented an erroneous table with other prior art.  The latter was promptly corrected.  The District Court denied the motion.  As part of the appeal of the grant of summary judgment in favor of plaintiffs, the Court ruled that there must be common law fraud to pierce the privilege.  There must be clear and convincing evidence of "deceptive intent together with a clear showing of reliance." Unigene Lab'ys, Inc., 655 F.3d at 1359 (quoting In re Spalding Sports Worldwide, Inc., 203 F.3d at 803).  Since the record did not show "clear evidence of intent" of a fraudulent act, the court did not reach the reliance issue and agreed with the ruling of the District Court.  Id.

The Court of Appeals for the Third Circuit has handed down several significant decisions on the subject of the crime-fraud exception.  In contrast to the Federal Circuit, the Third Circuit in none of its cases has stated that common law fraud requiring reliance is necessary to invoke the crime-fraud exception.  See, e.g., In re Chevron Corp., 633 F.3d 153 (3d

Cir. 2011); In re Grand Jury, 705 F.3d 133 (3d Cir. 2012);

Haines v. Liggett Grp. Inc., 975 F.2d 81 (3d Cir. 1992).

In re Chevron Corp. was a massive environmental lawsuit
pending in an Ecuadorian Court.  The District Court had allowed
discovery to take place in the United States for use in a
foreign proceeding pursuant to 28 U.S.C. § 1782.  The District
Court found that an expert engaged by the Ecuadorian Court had
employed a technical expert to aid him with his report on
damages.  That technical expert, however, was also employed by
the plaintiff in that action.  The District Court granted the
defendant's motion for disclosure of documents under the crime-
fraud exception.  The Court of Appeals reiterated the rule that
to obtain discovery the party invoking the crime-fraud exception
must make a prima facie showing that:

> (1) the client was committing or intending
> to commit a fraud or crime, and (2) the
> attorney-client communications were in
> furtherance of that alleged crime or fraud.

In re Chevron Corp., 633 F.3d at 166 (quoting In re Grand Jury

Subpoena, 223 F.3d 213, 217 (3d Cir.2000)).

Our Court of Appeals held that the first element of
the crime-fraud exception was established because there was
fraud "predicated on the presence of the conflict of interest
attributable to [the technical expert's] dual and, at least to
us, inconsistent employment."  Id.  It remanded the case to the

District Court to determine before disclosure of documents whether the defendant could make out a "prima facie showing that there were communications between the client and attorney in furtherance of that fraud." Id. at 167.  The Court of Appeals did not require the existence of common law fraud to pierce the attorney-client privilege.  A conflict of interest of an expert is sufficient if it simply advances a fraud.

Furthermore, the decisions of the Third Circuit, unlike those of the Federal Circuit, have described fraud in the crime-fraud exception to include advice as to attempted or intended fraud.  See, e.g., In re Grand Jury, 705 F.3d at 151; Haines, 975 F.2d at 95.  While the crime-fraud exception requires advice or work in furtherance of the fraud, nowhere do the Third Circuit cases require that the fraud be consummated. If the fraud does not have to be consummated, there can be no requirement of reliance.  For example, if a lawyer advises a client how to cash a bogus check at a bank and the client attempts to do so but the teller recognizes it as a bad check before it is cashed, no reliance as a result of the attempted fraud has occurred.  The court concludes that the law of the Third Circuit applies the crime-fraud exception without the need for reliance and does not allow the attorney-client privilege or work product to shield attempted or intended fraud from public view.  In sum, reliance while an essential element of common law

fraud is not an essential element of fraud for purposes of the crime-fraud exception in the Third Circuit.  For this reason, it is not necessary to decide whether the filing of a sham litigation in this Circuit is a common law fraud on the court.

The court must determine whether to apply Federal Circuit law or Third Circuit law to the pending motion.  The decision depends on the jurisdiction of these two appellate courts.  The Federal Circuit has exclusive jurisdiction over appeals of final decisions of district courts in civil actions in which a party has asserted a claim or compulsory claim "arising under any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1).  The Supreme Court had occasion to opine on the jurisdictional scope of 28 U.S.C. § 1338(a),[3] a statute similar to § 1295(a)(1), in Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988).

In that action, plaintiffs sued Colt under §§ 1 and 2 of the Sherman Act.  The plaintiffs alleged that Colt engaged in various anticompetitive acts, including the use of invalid patents, to drive plaintiffs out of business.  The District Court granted plaintiffs' motion for summary judgment on

_____

3.   Section 1338(a) then provided:  "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

liability.  It did so on the ground that Colt had acted
unlawfully in invoking what it held to be nine invalid patents
to advance Colt's anticompetitive purposes.

The issue before the Supreme Court was whether the
Seventh Circuit or the Federal Circuit had jurisdiction over the
appeal.  The Supreme Court decided in favor of the Seventh
Circuit.  It explained that the Federal Circuit's jurisdiction
extends:

> only to those cases in which a well-pleaded
> complaint establishes either that federal
> patent law creates the cause of action or
> that the plaintiff's right to relief
> necessarily depends on resolution of a
> substantial question of federal patent law,
> in that patent law is a necessary element of
> one of the well-pleaded claims.

Id. at 809.  Although the patent law issue was "arguably
necessary to at least one theory under each claim, [it was] not
necessary to the overall success of either claim."  Id. at 810.

In FTC v. AbbVie, 976 F.3d 327 (3d Cir. 2020), our
Court of Appeals examined whether an antitrust action that
included a sham patent litigation theory fell under the Federal
Circuit's jurisdiction.  The FTC asserted two claims:  (1)
defendants maintained a monopoly through a course of
anticompetitive conduct, which included sham patent infringement
litigation; and (2) defendants entered anticompetitive reverse
payment agreements.  The Court determined that it was the

antitrust law and not federal patent law that created both causes of action.  Federal patent law issues were not necessary to the success of the action because sham patent litigation was only one theory underlying the FTC's monopolization claim.  The Court further explained in detail that a sham patent litigation theory does not present substantial patent law issues.  See id. at 349-350.  See also In re Lipitor Antitrust litigation, 855 F.3d 126, 145-46 (3d Cir. 2017).  As a result, our Court of Appeals held that it had jurisdiction over that action and affirmed this court's finding that defendants engaged in sham patent litigation against Perrigo.

The well-pleaded complaint in this pending action states antitrust claims under §§ 1 and 2 of the Sherman Act and alleges in support of those claims that defendants used sham patent litigation as well as other illegal acts to maintain a monopoly.  Patent law does not create any cause of action here even if a patent law issue may be necessary to one or more theories of the action but is not necessary to the overall success of a claim.  See Christianson, 486 U.S. at 810.  As noted above, our Court of Appeals explained that there was no patent claim and the Federal Circuit did not have jurisdiction over an antitrust action even though there were allegations of sham patent litigation.  See AbbVie, 976 F.3d at 347.  That is precisely the situation here.  The plaintiffs allege claims

-11-

against the defendants under the Sherman Act.  The fact that
plaintiffs rely on the defendants' use of an invalid patent as
one of the theories to support plaintiffs' antitrust claims does
not make this action one with a patent law claim giving the
Federal Circuit appellate jurisdiction.

Plaintiffs' claims likewise do not raise a substantial
question of federal patent law.  See Christianson, 486 U.S. at
810.  Our Court of Appeals has established that the inclusion of
a sham patent litigation theory among others in an antitrust
action does not present substantial patent law issues.  See
AbbVie, Inc., 976 F.3d at 349-350.  Finally, it must be
emphasized that the definition of sham litigation is not limited
to patent infringement actions but applies broadly to actions
that have nothing to do with patent law.

The Federal Circuit does not have jurisdiction over
any appeal in this action.  It would be anomalous for this court
to be bound by the evidentiary privilege precedents of a
tribunal which has no say over this action.  It follows
therefore that this court should apply the law of the Third
Circuit, which does have jurisdiction over this antitrust
action, on the issues of the attorney-client privilege, the work
product doctrine, and the crime-fraud exception.  If the Seventh
Circuit had appellate jurisdiction over an antitrust action
where a district court held nine patents to be invalid, the

-12-

Third Circuit certainly has jurisdiction here.  See
Christianson, 486 U.S. at 806.

The defendants argue that if the court holds that
documents advancing the filing of a sham litigation are subject
to the crime-fraud exception, the salutary cloak of the
attorney-client privilege and work product doctrine will be torn
asunder.  Defendants maintain that every lawsuit deemed to be
meritless will be the subject of a motion for documents under
the crime-fraud exception.  Defendants are incorrect and their
fears are unfounded.  A sham litigation is much more than a
meritless lawsuit.  To be a sham, a lawsuit must not only be
objectively baseless, that is meritless, but also the subjective
motivation for bringing the lawsuit must be something other than
to succeed on the merits, for example to cause delay and expense
to the opposing party.  Furthermore, as explained hereafter,
merely claiming fraud is not sufficient for in camera review.
In any event, the applicability of the crime-fraud exception
does not depend on the matter of frequency.  It is important not
to lose sight of the fact that the attorney-client privilege and
the work product doctrine are not absolute and may not be used
to conceal discussion of future wrongdoing regardless of how
often such discussions take place.

The Third Circuit, in this court's view, would
conclude based on In re Chevron that the filing of a patent

-13-

infringement action held to be a sham is encompassed within the definition of a fraud under the crime-fraud exception to the attorney-client privilege and work product doctrine.  If an expert's conflict of interest in a foreign court can be a fraud, surely the filing of a sham lawsuit in the United States District Court for the District of New Jersey can be a fraud.

III

Any party invoking the crime-fraud exception is of course under an initial handicap because that party does not have access to the documents in question.  As is true here, that party generally has been provided with a log prepared by the opposing party which simply identifies the author and recipients, the date, the title if any, and a minimal description of each document in issue.  The party seeking the documents must ask the court to review them in camera to determine whether the party's assertion about the crime or fraud has validity.  Merely making a charge of fraud is not enough to trigger court review.  <u>See</u> <u>Clark v. United States</u>, 289 U.S. 1, 15 (1933).  A fishing expedition will not suffice.  The Supreme Court has set the standard that the party seeking to breach the attorney-client privilege must meet before a court undertakes in camera review.  It explained in <u>U.S. v. Zolin</u> that:

> for the Court to engage in an in camera
> inspection of documents to determine whether
> the exception applies, the party opposing

-14-

> the privilege . . . must present evidence
> sufficient to support a reasonable belief
> that in camera review may yield evidence
> that established the exception's
> applicability.

491 U.S. at 574-75.  The decision of the court to review

documents is a minimal intrusion into the attorney-client

privilege and work product doctrine.  The standard for

undertaking such a review is much more lenient than for a

finding that the veil of secrecy no longer applies.  See id. at

572.

The plaintiffs have met the standard for this court's

in camera review of documents identified in the log provided by

the defendants.  This court as well as the Court of Appeals has

previously determined by a preponderance of the evidence that

the attorneys who brought the Perrigo lawsuit were experienced

patent attorneys who knew the patent they were attempting to

enforce was invalid.  The court found that the Perrigo lawsuit

was not only objectively baseless but also was filed "to impose

expense and delay on . . . Perrigo so as to block [its] entry

into the TTRT market."  AbbVie, 329 F. Supp. 3d at 126.  There

is sufficient evidence to support this court's "reasonable

belief that in camera review may yield evidence that establishes

the exception's applicability."  Zolin, 491 U.S. at 747-75.

To find that the disclosure of documents is warranted

under the crime-fraud exception, the test is higher.  As

-15-

previously noted, the party seeking to overcome the privilege
"must make a prima facie showing that (1) the client was
committing or intending to commit a fraud or crime, and (2) the
attorney-client communications were in furtherance of that
alleged crime or fraud."   In re Grand Jury, 705 F.3d at 151.

　　　　Our Court of Appeals has defined the meaning of a
"prima facie showing." It has explained that:

> where there is a reasonable basis to suspect
> that the privilege holder was committing or
> intending to commit a crime or fraud and
> that the attorney-client communications or
> attorney work product were used in
> furtherance of the alleged crime or fraud,
> this is enough to break the privilege.

Id. at 153.

　　　　Plaintiffs seek in camera review of 211 documents
which the court is advised total some 800 pages.  The court has
discretion to decline or limit any review based on a number of
factors including the volume of materials.  See Zolin, 491 U.S.
at 572.  At this time, the court will direct the defendants to
produce for review one hundred of those documents as selected by
the plaintiffs.  The court will grant defendants an opportunity
for further briefing to support their position that such
documents should not be made available to the plaintiffs.  See
Haines, 975 F.2d at 96-97.  The plaintiffs may file a response.
If the court determines that any document should be disclosed to
plaintiffs, it will give the defendants an opportunity to obtain

-16-

appellate review of this court's order before any disclosure

takes place.  <u>See</u> <u>id.</u> at 97.